Willetta WEATHERLY, Plaintiff
and Counter–Defendant,

v.

ILLINOIS BELL TELEPHONE,
Defendant and Counter–
Plaintiff.

No. 93 C 2248.

United States District Court,
N.D. Illinois,
Eastern Division.

June 16, 1994.

**1302**

Bradley Daniel Birge, Chicago, IL, for Willetta Weatherly.

Patrick J. Kilroy, Jr., Carolyn Swayne Pearson, Ameritech Corp., Suzan J. Sutherland, Eileen Teresa Pahl, Rodriguez & Villalobos, Chicago, IL, for Illinois Bell Telephone.

### MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before us on Defendant Illinois Bell Telephone's ("Illinois Bell") Motion to Dismiss Counts III, IV, and V of Plaintiff's First Amended Complaint at Law.

For the reasons discussed below, the Motion is granted in part and denied in part.

### Background

As set forth in the Complaint, the circumstances giving rise to this action are as follows.[1] Prior to September 1, 1992, Plaintiff Willetta Weatherly was employed full-time by Defendant Illinois Bell. As of June 1992, Weatherly was over fifty years old and had twenty-five years of service with Illinois Bell.

Weatherly was a participant in Illinois Bell's Ameritech Pension Plan (the "Plan"). Her pension benefits were fully vested as of June 1992. The Plan permits participants to choose between several different pension pay-out methods, including one providing for a lump-sum distribution of pension benefits.

Between September 1991 and June 1992, Weatherly experienced ill-health and apparently was not working full time. In June 1992, Weatherly returned to work full-time. She intended to work until she reached the age of fifty-five so that she could obtain the maximum retirement benefits available to her under the Plan.

After her return to work in June 1992, Weatherly was advised by her manager that she was being placed on a "Final Warning" for taking extended sick leave. She was also advised that she would be terminated and would lose her pension if she took any more sick leave. Her manager asked whether she would consider taking early retirement and directed her to speak with an Illinois Bell pension benefit specialist by the name of Barbara Sloan.

During communications that took place between June 1992 and September 14, 1992, Sloan represented to Weatherly that she would receive a $115,948.53 lump sum payment, a $11,558.86 pension enhancement, and a $1,923.39 bonus should she take early retirement. Sloan's representations regarding Weatherly's retirement benefits were incorporated in a September 1, 1992 letter to Weatherly. Illinois Bell did not inform Weatherly of the assumptions used in calculating her potential benefits. Weatherly was

---

1. On a motion to dismiss, we accept as true all well-pleaded factual allegations of the complaint.

*Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992).

given until August 21, 1992, to accept the early retirement package.

Weatherly accepted Illinois Bell's offer of early retirement on August 21, 1992, after consulting with financial planners at Citibank and American National Bank. According to Weatherly, she was concerned with her health and the possibility of losing her retirement benefits. Illinois Bell tendered a check in the amount of $115,948.53 to Weatherly.

On September 14, 1992, Sloan advised Weatherly that a mistake had occurred in the calculation of Weatherly's retirement benefits. Weatherly was told that she would not receive the remaining $13,482.25, and in fact owed Illinois Bell over $18,000. According to Illinois Bell, Weatherly's pension benefits had been calculated based on the erroneous assumption that she had reached age fifty-five.

Weatherly commenced this action in the Circuit Court of Cook County, Illinois on April 13, 1993. On that date, Illinois Bell removed the action to this Court pursuant to 42 U.S.C. § 1441 on the basis that the action arises under section 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[2] Weatherly filed her First Amended Complaint at Law on January 20, 1994.

The five-count First Amended Complaint advances both federal and state law claims. Count I seeks to enforce Weatherly's rights, under 29 U.S.C. § 1132(a)(1)(b), to the pension benefits promised her by Illinois Bell and seeks payment by Illinois Bell of the remaining $13,482.25 allegedly owed her. Count II seeks a declaratory judgment clarifying her right to future health care benefits for herself and her son. Count III alleges a violation of ERISA section 1140 on the grounds that Illinois Bell intended to deprive Weatherly of future pension benefits through threats and coercion. Count IV is an estoppel claim. Count V is a state law claim for fraud in the inducement. Illinois Bell maintains that Counts III, IV, and V fail to state claims.

---

**2.** On July 30, 1993, Illinois Bell filed a three-count counter-claim against Weatherly. Count I is a claim for $21,593.02 under ERISA Section

### Discussion

We may not dismiss a complaint with prejudice unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). "Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted).

### I. Count III—Violation of ERISA Section 1140

ERISA Section 510 makes it unlawful for any person to

discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of an employee benefit plan] for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140 (1993).

■ To recover under ERISA section 510, a plaintiff must show that the employer acted with a specific intent to interfere with ERISA rights. *Meredith v. Navistar Int'l Transp. Co.* 935 F.2d 124, 127 (7th Cir.1991). "'[N]o action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the [action].'" *Id.* (quoting *Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 896 (9th Cir.1991) (citations omitted)). A plaintiff alleging discrimination under section 510 must show that the defendant acted in a way that affected the employment relationship. *Paul v. Valley Truck Parts, Inc.,* 1990 U.S. Dist. LEXIS 4554, at * 18 (N.D.Ill.1990) (citing *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980)).

■ According to Illinois Bell, Count III should be dismissed because Weatherly will not be able to prove that Illinois Bell discrim-

---

502, 29 U.S.C. § 1132. Count II is a claim for mutual mistake of fact. Count III is a claim for unjust enrichment.

inated against her in violation of section 1140. As Illinois Bell sees it, Weatherly's dispute with Illinois Bell is over the amount of her pension benefits and has nothing to do with her employment relationship.

Drawing all reasonable inferences in favor of Plaintiff, *Midwest Grinding Co.*, 976 F.2d at 1019, we find that the allegations contained in the Complaint are sufficient to make out a claim under ERISA section 510. Illinois Bell's assertions to the contrary, we need not look as far as Weatherly's Motion to Dismiss for the necessary factual allegations. Weatherly states in paragraph 21 of Count III alleges that she was told that she would "lose her pension" if she "took any more sick leave." (Compl. ¶ 21.) She alleges that Illinois Bell's "threats of final warning and misrepresentations of benefits" were made "in an effort to deprive Plaintiff, Willetta Weatherly, her rights to full retirement at age fifty-five." (Compl. ¶ 37.)

These allegations are enough to put Illinois Bell on notice of the basis of Weatherly's claim. *See* Fed.R.Civ.P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (notice pleading requires "short and plain statement" that gives defendant fair notice of claim and grounds on which relief is sought). As Weatherly sets forth in her Complaint, she intended to maximize her pension benefits by working until she attained the age of fifty-five. Illinois Bell induced her to retire earlier by threatening her with the loss of her pension benefits, and thereby interfered with her employment relationship. As a result, Weatherly was denied the opportunity to earn the additional pension benefits that apparently would have been available to her had she retired at age fifty-five rather than at age fifty-one. The Motion to Dismiss is denied as to Count III.

## II. *Counts IV and V—Estoppel and Fraud in the Inducement*

Counts IV and V do not fare as well. Illinois Bell argues that both claims are preempted under ERISA as a matter of law. We agree, notwithstanding Weatherly's argument that judgment in her favor will not impact the Plan itself.

ERISA "supersede[s] any and all State laws insofar as they may . . . be related to any employee benefit plan." 29 U.S.C. § 1144(a). State laws that regulate insurance are exempted from preemption. 29 U.S.C. § 1144(b).

■■■ This "deliberately expansive" preemption clause, *District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513, 520 (1992), "establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan that is governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). A state law "relates to" an employee benefit plan if it "has a connection with or a reference to such a plan," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); " 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.' " *Greater Washington Bd. of Trade*, —— U.S. at ——, 113 S.Ct. at 583 (quoting *Ingersoll–Rand Co. v. McLendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)). A law is "connected to" an employee benefit plan if the existence of a plan is "a critical factor in establishing liability." *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. at 483.

■■ We conclude after reviewing the applicable case law that Weatherly's state-law based fraud claim falls within the scope of section 1144(a) because it "relates to" an employee benefit plan. The claim is connected to the Plan because but for the existence of the Plan Illinois Bell would not be liable. The relief sought in Count V is a declaration that "the pension benefits as outlined in the September 1, 1992 letter . . . be in full force and effect." The damages sought are equal to the additional pension benefits to which Weatherly believes she is entitled. This amounts to a claim for damages in the form of a " 'loss of employee benefits,' " and "dem-

onstrates that [Weatherly's] fraud claim not only 'relates to' an employee benefit plan but is at its core an ERISA claim." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Such fraud claims are preempted. *Id.; Lee v. E.I. DuPont de Nemours and Co.*, 894 F.2d 755, 758 (5th Cir.1990).

■ Weatherly likewise is not entitled to advance a state law estoppel claim. Such a claim is preempted by ERISA. *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Broth. of Teamsters*, 984 F.2d 762, 767 (7th Cir.1993) (citing *Lister v. Stark*, 890 F.2d 941, 945 (7th Cir.1989), *cert. denied*, 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990)). *Cf. Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990) (holding that estoppel principles are applicable in cases involving unfunded employee welfare benefit plans).

Weatherly argues that we should extend the Seventh Circuit's holding in *Black* to the instant case, despite the fact that the Plan involved here is funded rather than unfunded, and is a pension plan rather than an employee welfare benefit plan.[3] According to her, her dispute is really with Illinois Bell, and it is Illinois Bell who is liable under an estoppel theory. Plan assets will not be disturbed. Thus, she reasons, her claim should not be preempted as it has nothing to do with ERISA or the actuarial soundness of the ERISA-governed Ameritech Pension Plan.

Weatherly's argument misses the mark on two levels. First, her effort to distinguish Illinois Bell, the corporation, from Illinois Bell, the plan administrator and plan sponsor, disregards her own admissions that: (1) Illinois Bell, through its Benefit Committee, is the plan administrator; (2) Illinois Bell is the Plan Sponsor; and (3) the alleged misrepresentations were made by a "pension benefit specialist." Weatherly's argument also conveniently disregards that fact that her claim is for additional pension benefits to which she believes she is entitled, not merely a claim for damages incurred as a result of Illinois Bell's conduct.

■ This sort of "end-run" was rebuffed by the Seventh Circuit in *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992). The *Pohl* plaintiffs sought damages from the plan administrator for misrepresenting to them the extent of coverage for certain medical treatments provided to their daughter. *Id.* at 127. Despite the fact that the claim for damages was directed against the plan administrator, the Seventh Circuit held that the claim was preempted.

> One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out oral modifications. This purpose would be thwarted if participants could maintain suits under state law that were based on oral representations of coverage. It is true that the Pohls are not seeking to enlarge coverage as such; but any money they obtained would be functionally equivalent to a benefit to which the written terms of their plan do not entitle them.

956 F.2d at 128.[4]

Even more damning to Weatherly's case is the Seventh Circuit's statement that ERISA would knock out an effort to use state law to obtain benefits by "charging the plan administrator with negligently misrepresenting [the existence] of coverage ... and arguing promissory estoppel or equitable estoppel ... [to try] to forbid the defendant to deny coverage...." *Id.* at 127. That, in fact, is precisely what Weatherly is attempting to

---

**3.** Under ERISA's terminology, plans providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services" are called "employee welfare benefit plans." 29 U.S.C. § 1002(1)(A). They are distinct from "employee pension benefit plans" or "pension plans" which provide retire-

ment income or deferred income opportunities for employees. *See* 29 U.S.C. § 1002(2)(A).

**4.** The Fifth Circuit likewise has concluded that preemption is not avoided merely because the plaintiff seeks recovery from the employer rather than the plan or its assets. *E.g., Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1292–93 (5th Cir. 1989).

do. She alleges that Illinois Bell misrepresented the value of pension benefits to which she is entitled, and asks that they be estopped from denying her the additional benefits. She is not entitled to use state law to accomplish such a result.

■ The final issue we must address is whether Weatherly is entitled to advance a federal common law-based estoppel claim. If the answer is yes, Count V should not be dismissed notwithstanding Defendant's (correct) argument that ERISA preempts a *state law-based* estoppel claim.

The issue is a bit murkier than the viability of a state law estoppel claim. The answer clearly would be yes (at least in this Circuit) if the Plan were an unfunded, single-employer welfare benefit plan. *See Black,* 900 F.2d at 115. That, however, is not the case here.

*Black* does not control. The Seventh Circuit explicitly declined to express an opinion as to the availability of estoppel in other circumstances. Furthermore, the rationale behind *Black* rests heavily on the fact that because the plan was unfunded nobody other than the employer who acted wrongfully would be hurt. 900 F.2d at 115. That rationale is inapplicable here. We must look beyond *Black.*

We conclude that *Black* should not be extended to these facts and hold that Weatherly is not entitled to a federal common law-based estoppel claim. Recognizing such a claim would engraft onto the ERISA a remedy not authorized by Congress. That is not our role in the federal scheme. Furthermore, in so doing we would be interfering with the " 'accomplishment and execution of the full purposes and objectives of Congress.' " *Jones v. Rath Packing Co.,* 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

The Supreme Court has repeatedly stated that the remedies contained in ERISA section 502(a), 29 U.S.C. § 1132(a), are intended to be exclusive. *Pilot Life,* 481 U.S. at 52, 107 S.Ct. at 1555; *see Massachusetts Mut. Life Ins. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). As the Court noted in *Russell,*

> "the six carefully integrated civil enforcement provisions found in section 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme...."

473 U.S. at 146, 105 S.Ct. at 3092.

Allowing Weatherly to maintain her estoppel claim would require us to create a federal common law remedy. Nowhere in ERISA section 502(a) did Congress provide for an estoppel remedy, much less an estoppel remedy that would entitle a plaintiff to relief over and above benefits due under the plan.[5] Section 502(a) restricts a plan participant like Weatherly to actions to recover benefits due her, to enforce her rights to such benefits, or to clarify her rights to future benefits. We do not see how, consistent with the Supreme Court's holding in *Russell,* we can recognize what is essentially a cause of action for extracontractual damages.[6]

We are also troubled by the fact that recognizing such a cause of action would be at odds with ERISA's "written instrument" and amendment provisions. ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Every plan is to "provide a

---

5. ERISA section 502(a) provides in part:
   A civil action may be brought—
   (1) by a participant or beneficiary—
   (A) for the relief provided in subsection (c) of this section, or
   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 ...
29 U.S.C. § 1132(a).

6. Weatherly does not allege that she is entitled under the terms of the Plan to the amount discussed with her by Ms. Sloan.

procedure for amending such plan, and for identifying the persons who have authority to amend the plan...." 29 U.S.C. § 1102(b)(3).

The written agreement clause is intended to "prevent collusive or fraudulent side agreements between employers and employees ... [that] discriminate in favor of certain plan participants to the detriment of others.... Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan." *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296 (5th Cir.1989). It is for that reason that oral modifications and informal written amendments to ERISA-governed plans are not enforceable. *See Cefalu,* 871 F.2d at 1296 (citing *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986)).

■ Allowing a participant in Weatherly's position to recover under an estoppel theory thwarts Congressional policy. An estoppel claim that allows a participant to recover benefits to which she is not entitled under the unambiguous terms of the written plan is functionally indistinguishable from a claim seeking to enforce an oral modification of a written plan. Recognizing such an estoppel claim opens the door to the very side agreements, informal written amendments, and actuarially unsound conduct feared by Congress.

Our decision here is not inconsistent with the decisions by the Ninth and Eleventh Circuits to allow estoppel claims in certain circumstances. *See Alday v. Container Corp. of Am.,* 906 F.2d 660, 666 (11th Cir. 1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991) (federal common law claim of estoppel only available where plan provision ambiguous and representations are made to employee involving oral interpretation of ambiguous provision); *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 822 (9th Cir.1992) (adopting Eleventh Circuit reasoning and noting

that the limitation established by the Eleventh Circuit is especially important "where the equitable estoppel claim would result in a payment of benefits that would be inconsistent with the written plan and where an oral amendment or modification would be the practical result of a successful estoppel claim"). Those Circuits recognize the availability of estoppel only when the representation involves the interpretation of an ambiguous plan provision.[7]

### *Conclusion*

For the reasons stated above, Defendant's Motion to Dismiss is denied as to Count III. We conclude that Defendant's Motion to Dismiss should be granted as to Counts IV and V as Plaintiff's state law claims are preempted by ERISA pursuant to 29 U.S.C. § 1144(a), and Plaintiff will not be able to prove facts consistent with the allegations in the Complaint that would entitle her to relief under a federal common law estoppel theory. Counts IV and V of Plaintiff's First Amended Complaint at Law are hereby dismissed with prejudice.

---

7. The fact that our decision leaves Weatherly with no remedy for Illinois Bell's allegedly negligent misrepresentation is irrelevant, as harsh as that may seem. "The fact that ERISA does not provide a substitute remedy reflects not a senseless gap in the statute but a determination to

carry through the policy [of protecting the financial integrity of pension and welfare benefit plans] by confining participants to the entitlements spelled out in writing." *Pohl,* 956 F.2d at 128.