**Elvin W. KRAWCZYK and Gladys M. Krawczyk, Plaintiffs–Appellants,**

v.

**HARNISCHFEGER CORPORATION, First National Bank of Chicago, Master Trustee, et al., Defendants–Appellees.**

No. 94–1728.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1994.

Decided Nov. 21, 1994.

Mark A. Phillips (argued), Brookfield, WI, for plaintiffs-appellants.

Chris J. Trebatoski (argued), Thomas W. Scrivner, Michael, Best & Friedrich, Milwaukee, WI, for defendants-appellees.

Before WELLFORD,\* MANION, and KANNE, Circuit Judges.

\* Honorable Harry W. Wellford, United States Circuit Judge for the Sixth Circuit, sitting by designation.

WELLFORD, Circuit Judge.

Plaintiffs Elvin and Gladys Krawczyk ("Krawczyk") appeal the district court's grant of summary judgment for the defendants ("Harnischfeger" or "defendants") on plaintiffs' ERISA claim for increased retirement benefits. 869 F.Supp. 613. Plaintiffs seek to treat the entire lump-sum severance payment as compensation for pension purposes. Because the plan committee's interpretation of the plan's definition of "compensation" was reasonable, we AFFIRM the district court's grant of summary judgment.

## I.

Plaintiff (Elvin) began work for Harnischfeger in 1941. He was working in Harnischfeger's Escanaba, Michigan plant as a salaried employee in 1983 when he was told that he was being laid off and that the plant would be closed. At the time, plaintiff and other select employees were offered special termination benefits. Plaintiff elected to receive a lump-sum severance benefit of $20,000.

Under Harnischfeger's salaried employees retirement plan ("plan"), retirement benefits were calculated according to a formula that considered age at retirement, years of service, and the average compensation of the highest consecutive five full calendar years (out of the last ten) of employment. Because the plan only counted the highest five full calendar years of service, plaintiff was not entitled to count his last year (which was his highest salary year) because his last day of paid employment was December 14, 1983.[1] Out of considerations of fairness, however, defendants allowed the plaintiff to use a portion of the severance payment to "round out" the remainder of the last year. Harnischfeger thus helped plaintiffs by counting the last two weeks in 1983 for pension benefit purposes, arriving at a total monthly pension payment of $1,598.62.

Plaintiff objected to Harnischfeger's pension calculation just two days after he re-

1. Plaintiff's highest five consecutive years of compensation occurred in the last five full years of his employment, from 1979 through 1983, when his average salary was $37,614.24.

ceived a copy of the plan and the calculation of pension.[2] He argued that because he had received the severance payment in a lump sum, the entire $20,000 should be considered salary for pension purposes, thereby giving Krawczyk a monthly pension of $1,778.29, an additional monthly amount of $179.67. The plan committee, after a hearing on January 16, 1984, denied Krawczyk's claim on January 17, 1984. Five years later, plaintiff brought suit.

Despite his delay in bringing suit, Krawczyk persuaded the district court to remand his case to the plan committee because of insufficient notice of the hearing. At the ensuing hearing held in May, 1991, the defendants presented testimony from Richard Schilze, Harnischfeger's senior vice president, who testified that he had informed the plaintiff that the full lump sum would not be counted as salary for pension purposes. Defendants also presented evidence that employees were only allowed to round out the year with severance payments, and that no employee had been allowed to count any portion of the entire severance payment unless the entire amount was needed to round out the last year of service. Plaintiff elected not to testify, choosing instead to rely on the same argument that he presented at the first hearing (the plan's language was silent on this issue, and therefore, the severance pay should be included as salary for pension purposes).

Unhappy once again with the plan committee's decision, plaintiff returned to the district court and raised new procedural issues,[3] prompting the court to remark that "the Plaintiff's claims have become somewhat of a moving target." The district court offered to remand the case back to the plan committee to remedy these newly alleged procedural deficiencies. Plaintiff waived this offer and both parties moved for summary judgment. The district court entered summary judgment in favor of the defendants, and denied plaintiffs' motion.

2. On October 14, 1983, prior to electing the severance benefits, plaintiff asked to review a copy of the retirement plan document. He did not receive a copy of the document until December 7, 1983. The lump-sum payment was made on November 30, 1983.

## II.

We review the granting of a motion for summary judgment de novo, viewing all the evidence in the light most favorable to the plaintiff and according him the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate if the record reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Cuddington v. Northern Indiana Public Serv. Co.*, 33 F.3d 813 (7th Cir.1994).

■ Our de novo review, however, is governed by the same standards the district court employed in reviewing the committee's interpretation of the Plan. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court held that a deferential standard of review is appropriate when the plan administrator is authorized to exercise discretionary power to determine eligibility for benefits or to construe terms of the plan. *Id.* at 115, 109 S.Ct. at 956–57. The plan's language vests the plan committee with such discretion:

> The Committee shall have such powers as may be necessary to discharge its duties hereunder, including, but not by way of limitation, the following powers and duties: (a) to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder....

Harnischfeger Plan, § 7.3. Therefore, we will review the committee's interpretation of pension calculations under the abuse of discretion standard.

In applying this standard, we are mindful that the committee's decision to exclude the severance pay benefits from the pension calculations should only be overturned if the committee acted unreasonably. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295–96

3. Plaintiff argued that he had only been furnished the plan summary and not the plan itself.

(7th Cir.1993). The arbitrary and capricious standard does not require the committee's decision to be the only sensible interpretation of a plan, so long as its decision "offer[s] a reasoned explanation, based on the evidence, for a particular outcome." *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985). If the committee's decision offers a reasonable explanation, their decision should not be disturbed even if another reasonable, but different, interpretation may be made.

### III.

■ Although this case involves ERISA, the dispute is essentially one of contract interpretation to determine whether the parties intended the lump-sum severance payment to be included as compensation in calculating pension benefits. The beginning point normally would be the plan language. The company, however, did not provide the plaintiff with a copy of the plan until after he had made an irrevocable decision to accept the severance payment in a lump sum rather than through installments. Instead, Krawczyk stated that he relied on a summary definition of "compensation" in making his decision to receive the payment as a lump sum. The plan summary provides:

> The plan document specifically defines many of the terms used in this booklet. Briefly, the term **Compensation** means after 1970 your actual calendar year gross earnings paid except for prizes, awards and after 1976, foreign allowances.

*Id.* (emphasis in original). Plaintiff urges that severance awards should be included in the pension salary calculations because they were not excludable under the definition of "prizes, awards, or foreign allowances." Defendant argues, however, that severance payments are not includable under this definition because they constitute income replacement or supplement and are not considered "earnings" or annual "salary."

■ Because the definition contained in the plan summary is ambiguous and is capable of several interpretations, the plan administrator properly looked to extrinsic evidence to determine the parties' intent. *See Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir.1993). Once a term has been held to be ambiguous as a matter of law, the plan committee, and ultimately the court, may consider extrinsic evidence such as the intent of the plan's sponsor; whether the claimant's interpretation results in substantial unanticipated costs to the plan; and whether the administrator has given the plan a uniform, non-discriminatory construction. In reviewing a claim under the arbitrary and capricious standard, this court is also limited to consideration of the evidence that was before the administrator or trustee. *See Exbom v. Central States Welfare Fund*, 900 F.2d 1138, 1141–43 (7th Cir.1990).

■ Defendants have met the burden of providing clear extrinsic evidence of intent that the entire lump-sum payment was not to be included in the pension benefit calculations. At the administrative proceeding, the defendants presented testimony that in offering the early retirement benefit to select employees, there was no intent to provide a pension windfall to a particular recipient to the detriment of plan assets. *See Kennedy v. Electricians Pension Plan, IBEW # 995*, 954 F.2d 1116, 1123 (5th Cir.1992) ("An interpretation that would result in substantial unanticipated costs may be less likely to be legally correct."). Defendants also presented evidence that they consistently treated severance pay as an item to be excluded from the pension calculation. *See Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Brotherhood of Teamsters*, 984 F.2d 762, 766 (7th Cir.1993) (noting that uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious). The plaintiff offered no contrary proof at the hearing. The employer's director of employee benefits also testified that she knew of no instance in which a lump-sum severance payment had been considered as earned compensation for pension calculation purposes. Plaintiff did not rebut this evidence and instead relied on his same argument that the plan did not specifically exclude severance payments from the definition of compensation. Therefore, we cannot say that the plan committee's reliance on the evidence before it was unreasonable.

## IV.

Nor can we say that principles of estoppel should apply to this case. Although the Seventh Circuit has applied estoppel principles in unfunded benefit plans (welfare plans), this court expressed no opinion as to whether these principles should be applied to funded plans. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990). *See also Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647–48 (7th Cir.1993) (reaffirming *Black* without discussing whether it should be extended to funded benefit plans such as pensions). Another case that the plaintiff relies upon does not resolve this issue because it involved an unfunded employee welfare plan (health insurance). *See Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir.1990). Most circuits that have considered this issue have declined to extend estoppel principles to funded plans. *See Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527–28 (9th Cir. 1993); *Miller v. Coastal Corp.*, 978 F.2d 622, 624–25 (10th Cir.1992). *See also Law v. Ernst & Young*, 956 F.2d 364, 367 (1st Cir. 1992) (declining to resolve issue in pension plan case because plaintiff failed to establish elements of estoppel). The ordinary reason cited for this reluctance is the concern for the actuarial soundness of funded plans. *Black*, 900 F.2d at 115. *See also Jones v. UOP*, 16 F.3d 141, 145 (7th Cir.1994) (expressing concern over oral modification of ERISA plans).

■ Like the *Ernst & Young* court, we decline to address whether estoppel principles apply to funded ERISA plans because plaintiffs have not established the elements of estoppel. A party asserting estoppel must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise. *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 902 (7th Cir.1993).

■ Plaintiffs have failed to show that defendants knowingly misrepresented or concealed a material fact. Although Krawczyk contests the district court's finding that they did not allege that defendants made any affirmative misrepresentations, plaintiffs have provided no evidence on appeal of an affirmative misrepresentation. The evidence cited as being affirmative misrepresentations do not support plaintiffs' position, in our view.

Alternatively, plaintiffs argue that defendants should be liable under an equitable estoppel theory because they did not specifically state that the lump-sum pension benefit plan would not be included in the pension benefit plan. Even if we assume that such a claim may be based on mere silence rather that active concealment (there has been no showing of concealment or active misrepresentation), plaintiffs have not demonstrated that their reliance was reasonable. As the district court concluded,

> if the interpretation of the term "compensation" was crucial to his retirement decision, he [Krawczyk] could have and should have asked the defendants whether his interpretation was correct. Common sense should have indicated that Elvin's interpretation was too good to be true. No employee would have accepted the option of installment payment of the severance benefit, if he or she could have taken a lump sum and increased pension benefits instead.

The elements of equitable estoppel require plaintiffs' reliance to be reasonable.

Plaintiffs have suffered no detriment by the election to take the severance payment in lump-sum form instead of installments. Although Krawczyk argues that he would have not taken early retirement in order to avoid the early retirement factor, the defendants point out that he has not suffered any economic harm by electing to retire early. As the district court concluded, plaintiffs' expert witness did not show that the defendants' explanation was erroneous or that plaintiffs suffered economic harm by reason of their election.

Plaintiffs also attempt to show detriment by arguing adverse tax consequences through taking the severance payment in a lump sum rather than through installments.

This argument must fail for two reasons. Plaintiffs have simply failed to carry the burden of proof. They provided no calculations of loss, if any, that Krawczyk would have saved had he not elected to receive the severance payment as a lump sum. Second, even if the plaintiffs had provided a calculation of their tax loss, the loss could not be recovered under ERISA because tax losses are extra-contractual and thus, do not fall within the "appropriate equitable relief" available to redress a violation of ERISA. *See Novak v. Andersen Corp.*, 962 F.2d 757, 760–61 (8th Cir.1992).

## V.

Finally, plaintiffs challenge the amount of the district court's award of penalties for various procedural errors. The district court denied compensation for some procedural errors that were remedied through additional hearings, and awarded plaintiffs $2200.00 for the defendants' failure to furnish promptly a copy of the entire plan. We find no error in the district court's refusal to award further monetary damages for procedural defects that were remedied through additional hearings.[4]

Krawczyk "is not entitled to a substantive remedy for establishing a procedural violation on the part of the administrator." *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 621–22 (7th Cir.1987). Plaintiffs' procedural claims of late notice for the first hearing and insufficient explanation as to the reasons of the committee's denial have been remedied by additional hearings. Plaintiffs cannot parlay these procedural violations into further substantive relief.

## VI.

In sum, we cannot say that the defendants' interpretation of the ambiguous term "compensation" was unreasonable. We, therefore,

AFFIRM the district court's grant of summary judgment in favor of the defendants.

---

4. Although plaintiffs are unhappy with the amount awarded for defendants' failure to furnish promptly a copy of the plan, they have not appealed this amount. The district court, in its discretion, awarded the maximum amount under 29 U.S.C. § 1132(c) for Harnischfeger's failure to furnish promptly a copy of the plan.